Roberto **TORRES** and Walter Dinger,
Plaintiffs,

v.

**NEW YORK STATE DEPARTMENT OF
LABOR** and Martin P. Catherwood, Industrial Commissioner, Defendants.

**No. 70 Civ. 2408.**

United States District Court,
S. D. New York.

Supplemental Memorandum Opinion
Sept. 14, 1970.

Emilio P. Gautier, Manhattan Legal Services Corp., Dennis R. Yeager, Douglas D. Broadwater, New York City, for plaintiff.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for defendants; Samuel A. Hirshowitz, Brenda Soloff, Asst. Atty. Gen., New York City, of counsel.

## MEMORANDUM OPINION

LASKER, District Judge.

In this class action brought under the Civil Rights Act, 42 U.S.C. § 1983, plaintiff seeks to convene a three-judge court for the purpose of obtaining a declaratory judgment declaring §§ 597, 598 and 620 of the New York Labor Law, McKinney's Consol.Laws, c. 31, unconstitutional insofar as they authorize the suspension or termination of unemployment compensation benefits without a prior hearing. Plaintiff also seeks an injunction against the enforcement of these statutes. Jurisdiction is conferred on this court by 28 U.S.C. §§ 1343(3), (4), and by 28 U.S.C. §§ 2201, 2202.

### I. FACTS

Plaintiff Torres is an unemployed porter who lost his job with Kinney National Service, Inc. in January 1970. The New York State Department of Labor made an initial determination, effective January 26, 1970, that he was eligible for unemployment compensation. He began to receive such compensation, but subsequently the Department suspended and then terminated the benefits as of March 23, 1970, without providing plaintiff a hearing. After receiving notice of the termination, plaintiff secured a hearing for May 14, 1970.

The stated reason for the termination of benefits was that plaintiff had provoked his discharge. His former employer had the right to produce a witness whose testimony at the hearing would be necessary to substantiate the employer's version of the discharge. This witness failed to appear, however, and the hearing was adjourned indefinitely by the referee. Plaintiff then instituted this action by an order to show cause, which sought a temporary restraining order that would have required the Department of Labor to restore payments to plaintiff and to other members of the class he purports to represent. (As to the class, see infra.) On June 16, 1970, at the argument brought on by the order to show cause, the State Attorney General's office (representing the defendants) notified the court that a hearing for Torres was scheduled for the following day. I declined to issue a temporary restraining order at that time as to the class, but reserved decision pending the results of the hearing.

The plaintiff, his attorney, and representatives of both the employer and the defendant Industrial Commissioner appeared at the hearing. The referee held that the Department's initial ex parte determinations of voluntary leaving and willful false statement were sustained, that the termination of benefits was proper, and that plaintiff would have to return the benefits he had received. The plaintiff has the right to appeal that decision within the State administrative framework. New York Labor Law § 598.

Following the referee's determination, the plaintiff moved in this court for an order determining that this action may proceed as a class action, and for a preliminary injunction. Defendants opposed this request on the ground that the named plaintiff Torres was no longer representative of any class of people challenging pre-hearing termination of benefits, because he himself had received a full-fledged hearing. Defend-

ants further contended that as a result of the hearing the entire matter is moot.

The questions before me, therefore, are the following: (1) whether the case is moot as to Torres or the other members of the class; (2) whether Torres is a proper representative of the class; (3) whether the action should proceed as a class action; (4) whether preliminary relief should be granted at this time; and (5) whether a substantial constitutional question has been raised justifying the convening of a three-judge court under Title 28 U.S.C. § 2281.

I have concluded that the matter is not moot; that Torres has standing as a representative of the class; that the matter should proceed as a class action; that no preliminary relief is warranted; and that a decision as to the convening of a three-judge court is premature for reasons explained below.

## II. MOOTNESS

■ Defendants maintain that "no meaningful relief" could be afforded to Torres once he received the hearing which he requests in his complaint, and that, accordingly, the action should be dismissed. They cite United States ex rel. Michael Machado v. Wilkins, 423 F.2d 385 (2d Cir. 1970), and Phipps v. McGinnis, 69 Civ. 3236 (S.D.N.Y. May 13, 1970), in support of this position. Neither case is controlling here, however, for the significant reason that Torres has requested the restoration of the unemployment insurance benefits which were withheld prior to his hearing. Assuming that on the merits his contentions on the constitutional issues are upheld and that it was ultimately found that he was entitled to benefits, it would be quite feasible to restore those payments, since they are liquidated and easily ascertainable. Machado, in contrast, brought a habeas corpus proceeding, and no meaningful relief was available to him because by the time the case reached the Court of Appeals he had been released from prison. Phipps did not request monetary relief either, and

even if he had, his damages, if any, would have been most speculative.

Furthermore, it is indisputable that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i. e., does not make the case moot." United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). For a defendant to establish that a case involving important public issues is moot, he must "demonstrate that 'there is no reasonable expectation that the wrong will be repeated.' The burden is a heavy one." Id., 345 U.S. at 633, 73 S.Ct. at 897. Here, far from demonstrating that pre-hearing termination of benefits will not reoccur either as to Torres or the class he seeks to represent, defendants deny that such terminations are a "wrong" and presumably, believing in the correctness of their position, will continue the practice unless ordered otherwise. Under these circumstances, injunctive relief could be appropriate, for there certainly "exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." Id., 345 U.S. at 633, 73 S.Ct. at 898. See Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); United States v. Concentrated Phosphate Export Association, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968); Pierce v. LaVallee, 293 F.2d 233, 234 (2d Cir. 1961); Moya v. DeBaca, 286 F. Supp. 606, 607 (D.New Mexico 1968).

The observations of the Supreme Court in Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1962), are applicable. There the Court, ruling in a malapportionment case, stated (375–376, 83 S.Ct. 806):

"Moreover, we think the case is not moot by reason of the fact that the Democratic Committee voted to hold the 1962 primary on a popular vote basis. But for the injunction issued below, the 1962 Act remains in force; and if the complaint were dismissed it would govern future elections. In addition, the voluntary abandonment

of a practice does not relieve a court of adjudicating its legality, particularly where the practice is deeply rooted and long standing. For if the case were dismissed as moot appellants would be 'free to return to * * * [their] old ways.' "

■■ An additional factor that operates to preserve this case from mootness results from the fact that the action was denominated a "class action" from the outset. Once a suit is filed as a class action, it should be assumed to be one, and treated as such, even prior to the actual, formal determination that it is a class action. 3B Moore's Federal Practice, para. 23.50, p. 23–1103. Since this case was presumptively a class action from the beginning, it was a class action at the time that Torres was given his hearing. The fact that the named plaintiff Torres received the essential element of his requested relief did not and does not benefit the other members of the class; certainly as to them the action is not moot and should not be dismissed. Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968); Cypress v. Newport News General & Nonsectarian Hosp. Assn., 375 F.2d 648, 658 (4th Cir. 1967); 3B Moore's Federal Practice, para. 23.40, p. 23–651/23–652. See the discussion of standing, infra.

## III. STANDING

Defendants contend that Torres is not a representative party within the meaning of Rule 23, Fed.R.Civ.Proc., because he has already received the hearing which the class of people he purports to represent are seeking. This argument is substantially similar to the defendants' position as to mootness, and it is unpersuasive for similar reasons. In the first place, the hearing which Torres received was not the kind of hearing which the "class" seeks; it was a post-termination rather than pre-termination hearing. In a sense, Torres' status as of the time he brought this action could never be changed and could lead neither to mootness nor to his being unrepresentative. Giving Torres a hearing following the termination of his benefits cannot alter the fact that he was declared ineligible and deprived of unemployment compensation benefits before he was given a hearing. Thus, his status as a representative of others who are subjected to a prehearing termination has not changed.

■ Furthermore, in cases involving substantial questions of constitutional rights, there is a well established policy against applying technical rules of representation. As then-Judge Blackmun stated:

"It has been said that, in order to have standing to litigate a constitutional question, one must be asserting the right in his own behalf. Tileston v. Ullman, 318 U.S. 44, 46, 63 S.Ct. 493, 87 L.Ed. 603 (1943). But this 'is only a rule of practice' which may be 'outweighed by the need to protect * * * fundamental rights'; that need in turn will prompt courts on grounds of broad constitutional policy to proceed without blind adherence to technical rules of representation." Smith v. Board of Education, 365 F.2d 770, 776 (8th Cir. 1966).

See also Kelly v. Wyman, 294 F.Supp. 887 (S.D.N.Y.1968, Bryan, J.), aff'd sub nom. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970):

"Judicial determination of questions of this importance cannot thus be evaded and, in any event, dismissal is not appropriate when the individuals purport to represent a class." 294 F. Supp., supra, at 890.

In several other cases the defendants satisfied the named plaintiff's individual grievance (which, as stated above, is not even the situation here) and then urged—unsuccessfully—that the case was moot, or not appropriate as a class action for lack of a representative plaintiff. Those cases provide strong precedents for allowing plaintiff here to present the question of the substantiality of his constitutional claims. See Cypress v. Newport News General & Nonsectarian Hospital Assn., supra; Jenkins v. United Gas Corp., supra; Buckner v.

County School Board of Greene County, Virginia, 332 F.2d 452 (4th Cir. 1964). Also, in cases such as this there is a conceivable danger that the defendants could always grant the named plaintiff a hearing and then claim that the matter is moot or the plaintiff not representative in an effort to evade a judicial determination of the underlying constitutional issues. Such conduct would render those issues "capable of repetition, yet evading review." Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Although there is here no indication of a plan on the state's part to moot these cases on a continuous basis, nevertheless the nature of the subject matter reinforces my conclusion that Torres should not be deemed to have lost standing as a representative plaintiff in this class action.

## IV. NATURE OF THE CLASS

■ The class that is specified in the complaint and that Torres proposes to represent is composed of "all persons for whom the New York State Department of Labor has made or will make during the pendency of this action an initial determination pursuant to New York Labor Law Section 597 that they are eligible for unemployment insurance benefits, excepting those persons who from time to time exhaust their entitlement to those benefits by virtue of the operation of N.Y.Lab.L. § 590." This indeed is a very large class, consisting of perhaps some 95,000 persons. Counsel for defendants pointed out on oral argument that this definition is inappropriate and unworkable, but indicated that the scope of the class could be refined further. Plaintiff's counsel expressed willingness to cooperate in such an effort. This approach would be most useful. Instead of issuing an order defining the class now, it is sufficient for me to state that the action is appropriate as a class action under Fed.R.Civ.Proc. 23(a), 23 (b) (2), and that in general the class should consist of persons who are likely to be affected directly and adversely by

whatever constitutional infirmities may exist in the present statutory scheme for terminating unemployment compensation benefits.

## V. PRELIMINARY RELIEF

I find that it would be inappropriate to grant the preliminary injunction that plaintiff has requested. That injunction would restrain defendants from suspending or terminating the unemployment compensation benefits of present recipients unless and until they are given a full-fledged, "due process" hearing.

■ As a prerequisite to the granting of a preliminary injunction, the court must find that the plaintiff will probably succeed on the merits of the case, and that without injunctive relief he will be irreparably damaged. Studebaker Corp. v. Gittlin, 360 F.2d 692 (2d Cir. 1966); Symington Wayne Corp. v. Dresser Industries, Inc., 383 F.2d 840 (2d Cir. 1967). Although I have concluded that plaintiff's constitutional arguments are substantial (see infra), it is not clear that they will probably succeed. Furthermore, plaintiff has not established that the members of the class will be irreparably damaged unless injunctive relief is granted. In fact, plaintiff himself points out that a termination of unemployment compensation benefits does not necessarily render a former recipient destitute, for there remains in most cases the opportunity to apply for and receive welfare benefits.

In addition, defendants would be severely affected if an injunction were granted. Considerable sums of money from the compensation fund might be paid out to ineligible recipients without any meaningful prospect of recovery. This could directly harm the contributing employers whose payments to the compensation fund constitute the source of the moneys involved.

## VI. THREE-JUDGE COURT

I find that the plaintiff's general constitutional challenge to the New York unemployment insurance scheme is suf-

ficiently substantial to warrant the impaneling of a three-judge court, but that the other jurisdictional prerequisite of § 2281—the existence of a statute or order being enforced on a statewide basis—has not been satisfied thus far, and hence it would be inappropriate to convene a three-judge court at this time.

In New York State, unemployment insurance benefits are paid out of a fund maintained solely by "contributions," interest, and penalties received and paid into the fund by employers. The employers' "contributions" are de facto taxes; the rates are established by statute, and they depend in part upon an "experience rating charge" which reflects insurance benefits paid to persons previously employed by the same employer. Labor Law, § 581(1) (e), (2). The lower the amount of benefits paid, the lower the employer's rate, and conversely, the higher the amount, the higher the rate. For purposes of maintaining records of payments made to the employees of any given employer, separate "accounts" are maintained reflecting each employer's experience.

The experience rating system makes it in the interest of the employer to limit the benefits paid to his former employees. However, not all payments to a discharged employee are actually charged to the employer's special account, for in addition to the special account there is a General Account to which are debited" * * * all moneys paid to claimants which should not have been charged or are not chargeable to any employer's account; * * *" Labor Law, § 577 (1) (b), (4). Thus, moneys paid out erroneously are not charged to the employer's specific account. However, when the General Account is depleted, the tax rate rises; and it is from the General Account that moneys in the fund are actually pooled and made available to eligible claimants, Labor Law, § 581(1) (d). Claimants who receive money as a result of false representations or omissions are required to refund such sums to the Labor Department, Labor Law, § 594, and the Department also has the right to recover benefits subsequently found by the courts, on appeal, to have been erroneous. Labor Law, § 598. The moneys that the Department recovers are credited to the General Account. Labor Law, § 577(1) (a), (5).

Upon the filing of a claim with the local office, the Department is required to solicit certain information from the applicant's prior employers. If no such information is received within seven days after request, the Department "shall make the initial determination of the claim on the basis of the available information, which may include the claimant's statement." Labor Law, § 597. Thus, the Department may—and in plaintiff's case, it did—reach an initial determination of eligibility based solely upon information provided by the applicant.[1]

Once the initial determination of eligibility has been made, there apparently are at least three circumstances or events which can result in the Department suspending or terminating the payments it has already authorized. The first two events lead to suspension without notice or hearing, evidently as a matter of Department policy and practice; suspension is neither explicitly authorized nor required by statute or regulation. The third event results in suspension because the Labor Law requires it. I turn now to a description of these three stages or events.

---

1. In this case, Torres provided an incorrect address for his last employer. The Department's attempt to ascertain certain information from the employer proved unsuccessful at first, and the decision to grant benefits to Torres was made on the basis of his claim that the reason for his unemployment was "lay off—no work." Subsequently the De-partment learned of the employer's true address, communicated with the employer, and—apparently on the basis of what it learned from the employer—decided to make a redetermination. Ultimately the Department concluded that Torres had provoked his own discharge by frequently arriving late for work.

The first may be called internal departmental redetermination. § 597 of the Labor Law provides that

"* * * [a]ny determination regarding a benefit claim may, in the absence of fraud or wilful misrepresentation, be reviewed only within one year from the date it is issued because of new or corrected information * * provided that no decision on the merits of the case has been made upon hearing or appeal."

Counsel for plaintiff states in his affidavit that after the payments to Torres were suspended he telephoned an attorney in the Department's Appeal Board (as to the Appeal Board, see infra) and "* * * asked him what statute or regulation required such termination and he replied that no statute or regulation required such termination but that it was the Department's practice to terminate benefits without a prior hearing when the Department made a redetermination pursuant to New York Labor Law § 597." Counsel for defendants do not appear to contest this description of the Department's practice. Neither party points to any statute or regulation that authorizes it, and indeed there is none.

The second event which apparently leads to pre-hearing suspension and/or termination of benefits is the request of "any party affected by * * * [the initial] determination" to have a hearing before a referee. § 620 of the Labor Law entitles either the claimant or any such party to request a hearing. The claimant would not do so, of course, if the initial determination was favorable to him, but the employer very well might. (In this case, the affidavits indicate that Torres' former employer did not specifically request a hearing, but apparently was in touch with the Department following the initial determination of eligibility. As indicated supra, footnote 1, the communications between the employer and the Department resulted in the Department's suspension of payments. As a result of that suspension, it was Torres himself who requested a hearing.) As with § 597, there are no regulations

pursuant to § 620 that require suspension or termination of benefits once someone has requested a hearing, but the parties appear to concede that it is the practice of the Department to hold up payments pending the hearing.

The third event which results in suspension of previously authorized payments is the taking of an appeal to the appeal board "from a decision of a referee allowing benefits, * * * [in which event] such benefits shall not be paid unless and until the board affirms such referee's decision * * *" Labor Law, § 598. This third situation differs significantly from the first two in that the suspension of payments occurs only *after* a hearing has been held before the referee. Nevertheless, plaintiff attacks § 598, as well as the practices under §§ 597 and 620, even though the provisions of the referee's hearing involving notice, right to counsel, cross-examination, and stenographic record keeping afford substantial relief to the claimant (see 12 N.Y.C.R.R. § 461) and even though no payments to him were withheld pursuant to § 598 since the referee concluded that he was not entitled to benefits.

The one remaining aspect of the unemployment insurance scheme that should be mentioned here is that claimants are required to report each week to designated offices to specify the amount of work they obtained in the previous week, any days on which they were not available for work, their efforts to obtain work, and other information. Labor Law, § 596; 12 N.Y.C.R.R. § 473.2.

The question before me now is whether a three-judge court should be convened to rule upon plaintiff's challenge to the constitutionality of the above described unemployment compensation scheme, and in particular those practices and provisions under §§ 597, 598 and 620 of the Labor Law that allow for the suspension or termination of benefits without a prior "due process hearing."

The criteria a District Court should consider in deciding whether to convene a three-judge court were described

by the Supreme Court in Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962), as follows:

> "When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute."

In Heaney v. Allen, 425 F.2d 869 (2d Cir. 1970), the Court of Appeals for this Circuit stressed that the District Court must "conscientiously" pass upon the substantiality of the constitutional claims; the court also emphasized the undesirability of wasting already overworked judicial resources by too readily convening three-judge panels.

Plaintiff's constitutional claims are premised upon the holdings in several recent decisions in this Circuit and the Supreme Court. The most important of these cases is Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), affirming Kelly v. Wyman, 294 F.Supp. 895 (S.D.N.Y.1968). In Goldberg, the Supreme Court held that welfare payments cannot be terminated without first affording the recipients an evidentiary hearing accompanied by notice, the opportunity to present witnesses and confront other witnesses, the opportunity to retain an attorney, and the opportunity to appear before an impartial decision-maker who must state in writing the reasons for his determination. The holding in Goldberg has been extended recently to encompass termina-

tion of benefits involving public housing, Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir. 1970), and—most importantly—unemployment compensation, Java v. California Department of Human Resources Development, 317 F.Supp. 875, (N.D.Cal.1970). In the Java case, the plaintiff challenged an explicit California statutory provision (Calif.Unempl.Ins.Code § 1335) which cut off payments upon the filing by the employer of an appeal from the initial determination of eligibility. There the constitutional challenge to the pre-hearing termination was found to warrant the appointment of a three-judge court pursuant to 28 U.S.C. §§ 2281, 2284, and the three-judge court, finding the case "indistinguishable" from Goldberg v. Kelly, held the statute to be "defective" on constitutional grounds.[2]

In support of his challenge to the compensation scheme, plaintiff also relies upon Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), in which the Supreme Court held that the Wisconsin procedure for garnishing a debtor's wages violated due process because the machinery whereby the wages were frozen was set in motion before notice and an opportunity to be heard were afforded to the debtor.

The defendants contend that the above cited cases are inapplicable here for several reasons. They maintain that Goldberg v. Kelly, supra, involved a different and more cumbersome bureaucracy, and that the factors governing eligibility and redeterminations of eligibility are easier to apply in unemployment insurance cases than in welfare cases. Because the factors are more objective (at least in defendants' view) and are obtained almost exclusively from the employer and

2. The Java court also found that the California scheme violated 42 U.S.C. § 503 (a) (1), a federal provision that requires state unemployment compensation programs to be "reasonably calculated to insure full payment of unemployment compensation when due." Plaintiff in this case urges that the New York system also violates § 503(a) (1), and that a three-judge court would have pendent juris-

diction to consider this claim. It is not necessary to discuss here the pendent statutory argument, because the only question for redetermination at this time is whether the constitutional argument is substantial enough (and the other elements of § 2281 are present) so as to warrant the convening of the three-judge court in the first place.

the employee [3] (who must report periodically), the defendants claim that the Department's investigations and determinations are prompt and that there is a "general correctness of decisions * * *" Defendants also point out that unlike the situation involved in welfare payments, which are entirely paid for by the government, there is a third party here, viz., the employers, and that they too have a right to due process. If employees cannot have payments suspended or terminated without first being given a hearing, then no payments should be instituted in the first place until and unless the employer is heard. So runs defendants' argument.

Defendants assert that *Java*, supra, is inapposite because there the payments were cut off during a period when the claimant was considered eligible, whereas here payments were stopped only when Torres was declared ineligible. This overlooks the fact that Torres' payments were cut off while the Department was engaging in its redetermination, that its decision to undertake the redetermination was premised upon information provided by someone other than Torres, and that the very finding of ineligibility was made before Torres was given the chance to appear at a hearing—which is the very issue in this case.

Defendants claim that *Escalera*, supra, is different because in eviction proceedings there has developed a "usual" rule that adversary-type hearings be held, and also because *Escalera* did not involve the "mass re-evaluation" at stake here.

Defendants find Sniadach v. Family Finance, supra, distinguishable because there no administrative determination or investigation was involved, whereas here important administrative considerations assertedly justify the present scheme.

■ As indicated at the outset of this portion of the opinion, after considering the parties' contentions on the substantiality of plaintiff's constitutional claim, I have concluded that they are serious enough to warrant the convening of a three-judge court. While it is unnecessary to predict the outcome of the decision on the merits, it is quite apparent that the trend of judicial decisions is to afford procedural protections to recipients of government-administered benefits. Unemployment insurance recipients may well be entitled to and in this period of rising unemployment may well be in great need of, the same type of due process guarantees that have been granted to others in similar situations. The *Goldberg, Java, Escalera,* and *Sniadach* decisions may not be precisely identical to this case, but it is for a three-judge court to determine whether their reasoning should encompass this suit.

■ However, the substantiality of the constitutional claim is not the sole desideratum to consider in convening a three-judge court under 28 U.S.C. § 2281. To come within that provision, and within the rule set forth in the *Idle-*

---

3. In this regard, defendants cite Messer v. Finch, 314 F.Supp. 511 (E.D.Ky., 1970), where a three-judge court rejected an attack on the federal statutory scheme for terminating disability benefits under the Old Age, Survivors and Disability Insurance Act (OASDI). The court in Messer v. Finch quoted from a passage from Goldberg v. Kelly in which the Supreme Court contrasted the factors involved in terminating Aid For Families With Dependent Children (AFDC) with those involved in the termination of OASDI benefits, noting that "[i]n OASDI the circumstantial changes on which termination is based are nearly always reported or confirmed by the re-

cipient himself * * *" Defendants contend that unemployment insurance is more similar to OASDI than to AFDC in this respect. Perhaps it is, but in this case it was not Torres who reported the changes that led to his cut-off. Furthermore, plaintiff in Messer v. Finch was advised from the beginning that his status would be reviewed, was told when it would be reviewed, was interviewed before his payments were terminated, and was not deprived of the payments until a future date. Most importantly, it was a three-judge court that rejected the plaintiff's claim; that is, his arguments were deemed sufficiently weighty as to invoke a three-judge court.

*wild Bon Voyage Liquor* case, supra, it is necessary that the asserted unconstitutionality exist with respect to the "enforcement, operation or execution" of a state statute or order of an administrative board. Where the action seeks to restrain not a statute or administrative order authorized by statute, but instead the action of a state official who may be administering a constitutionally valid statute in an unconstitutional manner, it is unnecessary and improper to convene a three-judge court. Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941); Chester v. Kinnamon, 276 F.Supp. 717, 721 (D.Md.1967), Kaufman, J. As the Supreme Court stated in Ex Parte Bransford, 310 U.S. 354, 361, 60 S.Ct. 947, 951, 84 L.Ed. 1249 (1940):

> "It is necessary to distinguish between a petition for injunction on the ground of the unconstitutionality of a statute as applied, which requires a three-judge court, and a petition which seeks an injunction on the ground of the unconstitutionality of the result obtained by the use of a statute which is not attacked as unconstitutional. The latter petition does not require a three-judge court."

In this case, plaintiff has specified three sections of the New York Labor Law which he challenges as unconstitutional and which he seeks to enjoin. However, the two sections under which the Department appears to suspend or terminate benefits without prior hearing, i. e., §§ 597 and 620, neither require nor authorize such suspension/termination.[4] It is not clear from the scanty information provided the court thus far whether the practice of suspending/terminating payments upon either the decision to engage in a redetermination pursuant to § 597 or the receipt of a request for a hearing under § 620 is state-wide—a requirement of the three-judge statute.

To be sure, the Attorney General does not dispute plaintiff's claim that prehearing suspension of payments takes place, but the only basis for my concluding that it is the actual policy of the Department to cut off benefits in such a manner is the statement in the plaintiff's attorney's affidavit that another attorney in the Appeal Board indicated in a telephone conversation that it is departmental practice to withhold payments when it makes a redetermination. With only this meager information available, it would be premature to convene a three-judge court at this time. Even if plaintiff is attacking as unconstitutional the statewide operation of a statute, cf. Ex Parte Bransford, supra—which is what I believe to be the case here—the court should be more fully informed as to how that statute is applied before three judges are asked to overrule it. Although the provisions of § 598 (the third section of the statute which plaintiff attacks) are by their terms applied on a statewide basis, nevertheless it is too early to rule as to that section alone, since the statutory scheme is attacked as a whole, of which § 598 is only a part.

While I do not wish to postpone the determination of plaintiff's claims, the calendars of other judges and the causes of other litigants cannot be overlooked either. For these reasons it is necessary for me to defer the convening of a three-judge court until the basis for its jurisdiction is more apparent. The court therefore requests the parties to furnish complete information concerning the operation, scope and effect of the statutory provisions challenged in this complaint.

These observations appear particularly pertinent in the light of the Supreme Court's decision in Wyman v. Rothstein, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d

---

4. These sections of the statute do not preclude the hearing either, to be sure, but perhaps it is enough to challenge them for omitting a requirement of a hearing. See Kelly v. Wyman, 294 F.Supp. 887 (S.D.N.Y.1968), where the plaintiffs in what later became the Goldberg v. Kelly case brought suit seeking the convening of a three-judge court at a time when no statute or regulation either authorized or forbade the suspension/termination procedures being challenged.

218 (June 2, 1970), vacating a judgment of a three-judge district court and remanding the case to that court "to pass on the propriety of granting interim relief in accordance with conventional equitable principles on the basis of appellees' statutory claims * * * "

In sum: the case is not moot, plaintiff has standing as a representative of the class, and the case is determined to be a class action; the motion for a preliminary injunction is denied, and decision is reserved, under the conditions stated above, as to the propriety of convening a three-judge court.

It is so ordered.

## SUPPLEMENTAL MEMORANDUM OPINION

 Plaintiffs [1] have earlier moved for the convening of a three-judge court pursuant to 28 U.S.C. § 2281 to determine the constitutionality of the New York State Department of Labor's enforcement of §§ 597, 598, and 620 of the New York Labor Law. In the prior opinion in this case I held that the constitutional challenge to the apparent operation of these statutes was sufficiently substantial to warrant the convening of a three-judge court, but that I lacked enough information to conclude that it was the policy and practice of defendants to administer these provisions on a statewide basis in the manner alleged. I therefore requested that the parties furnish complete information concerning the operation, scope, and effect of these statutes. In response to my request, I have received a detailed affidavit from Harold Kasper, the Director of the Unemployment Insurance Bureau of the Division of Employment of the New York State Labor Department. Mr. Kasper's affidavit clearly establishes that it is the statewide practice of all unemployment insurance offices to discontinue immediately the payment of benefits to a claimant (1) when the department conducts an investigation pursuant to § 597 of the Labor Law, either upon its own initiative or after receiving information furnished by the employer, and concludes that the claimant is ineligible, or (2) when the "adjudication process" contesting an initial determination of eligibility is pending. The adjudication process includes the period immediately following the request for a hearing pursuant to § 620. Such a request can be made by an employer.

Thus it is now evident that the statute operates on a statewide basis with the result that employee benefits may be and are being terminated without the employee being first advised that his eligibility is under re-evaluation [2] and without his being given an opportunity to discuss the scheduled termination at a hearing. Under Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969), this state of facts presents a substantial constitutional question requiring consideration by a three-judge court pursuant to 28 U.S.C. § 2281 ff. As stated in Goldberg v. Kelley, *supra*, at 262, 90 S.Ct. at 1017:

"Relevant constitutional restraints apply as much to the withdrawal of public assistance benefits as to disqualification for unemployment compensation, Sherbert v. Verner, 374 U.

---

1. Originally this action was brought solely by plaintiff Torres. Following my earlier opinion, the complaint was amended and Walter Dinger was added as a named plaintiff. The amended complaint is substantially identical to the original. The only difference results from the fact that the defendants' reason for terminating Mr. Dinger's benefits derived from a change in his status subsequent to the initial determination of eligibility, whereas defendants maintain that Mr. Torres was never eligible to begin with,

and that as to him the initial payments were erroneous all along.

2. It is true that claimants must continually report to the Department's local offices on a weekly basis and that they must provide certain information as to their employment status. To this extent they are undeniably aware that their claims are periodically re-evaluated. However, they are not necessarily told of re-evaluations that result from information provided by sources other than themselves.

S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); * * *"

The Supreme Court having thus clearly indicated that constitutional principles are equally applicable to public assistance benefits and unemployment compensation, and having decided in *Goldberg* that recipients of public assistance benefits were entitled as a matter of due process to a hearing prior to the termination of those benefits, it is evident that the challenge here presented by the plaintiffs is real.

Accordingly, plaintiffs' motion for the convening of a three-judge court is granted and the Chief Judge of this Circuit will be requested to establish the court under the provisions of 28 U.S.C. § 2284.