**WEIGHT WATCHERS OF PHILA-
DELPHIA, Plaintiff,**

v.

**WEIGHT WATCHERS INTERNA-
TIONAL, Defendant.**

**No. 71 C 1089.**

United States District Court,
E. D. New York.

Sept. 23, 1971.

Hammond & Schreiber, New York City, by Dale A. Schreiber, New York City, for plaintiff.

Kaye, Scholer, Fierman, Hays & Handler, New York City, by Michael Malina, New York City, for defendant.

## MEMORANDUM and ORDER

COSTANTINO, District Judge.

This order to show cause arises from an action denominated a rule 23 class action seeking damages and injunctive relief for defendant's alleged violations of § 1 of the Sherman Act, 15 U.S.C. § 1 (1970). This action, Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc., 71–C–1089 (E.D.N.Y., filed Aug. 13, 1971), has been assigned to Judge Walter Bruchhausen in accordance with Rule 3, Individual Assignment and Calendar Rules, E.D. N.Y., as a matter related to Bergen Weight Watchers, Inc. v. Weight Watchers Int'l, Inc., 70–C–1146 (E.D. N.Y., filed Sept. 10, 1970), an action previously assigned to Judge Bruchhausen. In Judge Bruchhausen's absence, this order to show cause is before me pursuant to Rule 5, Individual Assignment and Calendar Rules, E.D.N.Y.

### Statement of Facts

The defendant is in the business of aiding overweight people to lose excess weight and to maintain their weight loss. The "Weight Watchers" method relies, for the most part, on the operation of classes, for which there is a registration fee, in which people with weight problems are helped to change their eating habits. In recent years, the defendant parent organization has issued a number of franchises giving the franchisees the right to conduct such classes under the "Weight Watchers" trademark.

Both this action and the earlier Bergen action assert the same claim, i. e., the defendant limited the maximum amount that franchisees could charge as a class registration fee and in so doing violated the Sherman Act, 15 U.S.C. § 1 (1970). Only the action by the Philadelphia franchisee, however, has been brought on as a class action.

Fourteen days after the service of the complaint filed by the Philadelphia franchisee, the defendant's Chairman of the Board, Albert Lippert, addressed a letter dated August 30, 1971 to all franchisees of the defendant. In that letter, Mr. Lippert informed the franchisees that the Birnhaks, the Philadelphia franchisees, had brought a class action charging the defendant with violating the federal antitrust law against price-fixing. Mr. Lippert also informed the franchisees that they would defend both the Birnhak and Bergen actions "vigorously"; that the defendant was seeking to obtain evidence to defend both cases, and that:

To our way of thinking, at stake is the good name and future of the entire Weight Watchers Organization, its credibility and its ability to continue to help the obese. Widespread publicity that any Franchisees claim that they preferred to charge more money to a highly sensitive obese population would surely have a detrimental effect on the image of WEIGHT WATCHERS. The impact of the cases, and the burdens, time and expense that the lawsuits impose on us interfere with the efforts to strengthen the entire WEIGHT WATCHERS franchise network. * * *

Mr. Lippert then requested the franchisees to discuss with their attorneys the problems raised by the pending lawsuits and to contact his office should they desire to aid in the defense of the actions. On September 3, 1971, the defendant's President, Mrs. Jean Nidetch, sent a letter urging all franchisees to help the defendant by complying in the manner requested in Mr. Lippert's letter of August 30, 1971.

On September 9, 1971, Judge Leo F. Rayfiel signed an order returnable before this court directing the defendant to show cause why it should not be:

(1) restrained from communicating with any member or potential member of the class on whose behalf the action was brought concerning the actions or matters related to it without prior ap-

proval of the court or prior written consent of the plaintiff's counsel;

(2) directed to transmit at its own expense to all recipients of the Lippert and Nidetch letters a letter of retraction in a form proposed by the plaintiff;

(3) directed to instruct its counsel to file a verified report of the particulars of any communication the defendant or its agents had with actual or potential members of the class the plaintiff claims to represent; and

(4) any further relief deemed just and proper.

A hearing on the order was held before this court on September 13, 1971.

### Rule 23: The Court's Power to Regulate Class Actions

It has been recognized that the class action is a type of action peculiarly open to abuse:

> The class action under Rule 23 is subject to abuse, intentional and inadvertant, unless procedures are devised and employed to anticipate abuse. Among the potential abuses of the class action are the following: * * * (4) unauthorized direct or indirect communications from counsel or a party, which may misrepresent the status, purposes and effects of the action and of Court orders therein, may confuse actual and potential class members, and create impressions which may reflect adversely on the Court or the administration of justice. To anticipate and prevent these abuses *timely action should be taken* by local rule or by orders in the particular civil action or by both.

Manual for Complex and Multidistrict Litigation, § 1.61, 49 F.R.D. 217, 218–19 (1970) (emphasis added) [hereinafter *Manual*]. Rule 23 outlines in a broad fashion general policies and directions that confide in the federal judiciary a wide range of discretion to prevent abuse in class actions or to issue remedial

orders where abuse has already occurred. See Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39 (1967); Note, Proposed Rule 23: Class Actions Reclassified, 51 Va.L.Rev. 629, 650–51 (1965); Cf. Dolgow v. Anderson, 43 F.R.D. 472, 487 (E. D.N.Y.1968), rev'd on other grounds, 438 F.2d 825 (2d Cir. 1971). As Professor Cohn noted:

> By section (d) of rule 23, the court is given express authority to issue orders controlling the conduct of the class litigation. This authority has undoubtedly existed in the district court prior to the new rule, but by specifying a nonexclusive list of possible orders, the new rule focuses the attention of court and counsel on the proper conduct of a class action.

Cohn, The New Federal Rules of Civil Procedure, 54 Geo.L.J. 1204, 1218 (1966). Under Fed.R.Civ.Proc. 23(d), it is evident "that the court is not rigidly bound in the types of orders it may issue," 3B J. Moore, Federal Practice, ¶ 23.70, at 1402 (2d ed. 1969), and that the court in its discretion may make "orders dealing with procedural matters that will facilitate the litigation." *Id.* ¶ 23.75, at 1475.

### The Argument on Application For a Rule 23 Corrective Order

In support of its application, the plaintiff charges that Mr. Lippert's August 30, 1971 letter was "replete with falsehoods, insinuations and threats" and constituted an abuse for which rule 23 provides remedial tools. The plaintiff also notes in its memorandum of law that should the court rule the communications transmitted by the letters of the defendant's officers to be beyond the pale of the court's regulatory power, then an attempt by the plaintiff to communicate with the franchisees "to set the record straight" would also be beyond the court's regulatory power.

The defendant, on the other hand, argues that the Lippert and Nidetch

letters were "carefully drafted," "scrupulously accurate" and in no way "misleading or confusing." In other words, that they were not abuses to be corrected by rule 23(d). Additionally, the defendant informs the court, that it is now at the pretrial discovery and evidence gathering stage in the *Bergen* case and that some franchisees have voluntarily contacted it to offer their assistance in preparation of the defense. In this regard, the defendant contends that if the relief the plaintiff seeks is granted, the defendant will be "unfairly hampered" in its defense preparation of both this action and the *Bergen* action.

On another point, the defendant argues that since no court has yet determined whether the plaintiff's action is properly maintainable as a class action, the notice provisions of rule 23 are inapplicable. Thus, the defendant contends the rule is silent on who may communicate with actual or potential class members at this stage of the proceedings and, accordingly, the defendant could not have committed an abuse contemplated by the *Manual* by communicating with the franchisees in the manner in which it did, at the time that it did.[1]

The defendant also contends that since this class action is not an action in which the actual or potential class members lack substantive knowledge relevant to the gravamen of the charge on which the action is founded, this action falls outside the scope of the intended prime concern of the authors of the *Manual*. The defendant argues that in cases where the actual or potential class members lack substantive knowledge of the charged illegality, *e. g.*, horizontal price fixing, the *Manual* sought to proscribe unauthorized communications because there was no conceivable proper reason to communicate. The defendant attempts to distinguish the instant action on the ground that since each franchisee, *i. e.*, potential class member, was also a witness necessary to the preparation of the defense, the *Manual* could not intend to include such communication within its broad proscription.

### Conclusions of Law

1. The defendant's argument that the failure to determine the propriety of maintaining this action as a class action makes the notice provisions of rule 23(c) inapplicable, is not material to the scope of the court's power under rule 23(d) to deal with abuses. The court declines to adopt any rule that would undercut the authority conveyed by rule 23(d). It would be a strange rule, indeed, where a court would be powerless to deal with what it considered abuses because the litigation had not reached a certain stage. To adopt such a rule would be little more than inviting counsel to engage in a race to complete questionable practices before the court acquires power to prevent such abuses. For the purpose of preventing and correcting abuses, once an action is filed as a class action it should be so presumed even prior to a formal determination that it is a class action. Torres v. New York State Dep't of Labor, 318 F.Supp. 1313 (S.D.N.Y.1970).

2. The court cannot concur in the defendant's limited view of the possibility of abuse in class actions. By holding that the court's regulatory power extends only to those types of class actions where the actual or potential class members have no substantive knowledge of the charged illegality, this court will be adding an unwarranted gloss over the court's power to deal with conduct it finds abusive.

3. The defendant has argued that if the court grants the requested relief, it will be hamstrung in its ability to defend both the action initiated by the

---

1. The defendant argues that the two cases cited by the plaintiff, Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 323 F.Supp. 364 (E.D.Pa.1970) and Siegel v. Chicken Delight, Inc., 271 F.Supp. 722 (S.D.Cal. 1967), were distinguishable at least on this ground.

Birnhaks and the *Bergen* action. The defendant also notes that the plaintiff in Bergen will not be bound by an order in the instant action. The fears expressed by the defendant, however, are little more than speculative. No specific examples of prejudice have been brought to the court's attention. Moreover, the court is empowered by rule 23(d) to issue protective or remedial orders in class actions, and, by rule 16, to issue such orders in any action. Thus, the court can deal with injustice or prejudice during the pretrial proceedings when and if the need arises. See 6 C. Wright & A. Miller, Federal Practice and Procedure § 1525 (1971).

4. An essential question, however, remains undecided: the relationship of Fed.R.Civ.Proc. 23 and Rule 5(a) (1), Individual Assignment and Calendar Rules, E.D.N.Y. Rule 5(a) (1) requires the Miscellaneous Part Judge to:

hear and determine matters requiring *immediate* action in cases already assigned to any judge of the court, if that judge is unavailable or otherwise unable to hear the matter * * *.
(Emphasis added.)

Under the individual case assignment system in effect in the Eastern District of New York, Judge Bruchhausen will have control of the instant action and the *Bergen* action. The plaintiff's motion is before me only because Judge Bruchhausen is not available. Pursuant to rule 5(a), I must hear and determine this motion as Judge Bruchhausen would, with the caveat that the motion involves a matter requiring "immediate action."

Our local rule, however, must be read in consonance with Fed.R.Civ.Proc. 23.

▆▆ The clear intent of rule 23 (d) is that the judge assigned to try the class action exercise, in his discretion, power to control the litigation, including the issuance of orders to prevent or remedy abuse. Viewing our individual assignment rules in this light, the Miscellaneous Part Judge should make rulings only on urgent matters to preserve the status quo until the judge assigned to preside over the class action is available to determine the motions in full.

▆ 5. Bearing this in mind, the court reserves decision on the plaintiff's second, third and fourth requests contained in its order to show cause signed by Judge Rayfiel on September 9, 1971. Unless the parties can come forward with specific allegations of prejudice, decision on these motions will remain reserved to be heard and determined by Judge Bruchhausen on his return.

▆ 6. The authors of the *Manual* have proposed a local court rule that, if adopted, would have prevented unauthorized communication by the parties with actual or potential class members. 49 F.R.D. at 229. Our court has not adopted such a rule, but the litigation of this motion has clearly revealed a potential for abuse [2] that could have been mooted by the adoption of the proposed rule. In order to preserve the status quo so that Judge Bruchhausen will be able to exercise the type of control over this litigation that was intended by rule 23, it is necessary that I issue a protective order

---

**2.** Counsel for both parties have expended considerable effort in arguing the relative merits of the Lippert and Nidetch letters. It should be made clear, however, a determination by the court that those letters were abusive only bears upon whether the court should grant remedial relief. Under rule 23(d) the court would have the power to prevent communication without the court's prior authorization with any actual or potential class members whether or not the Lippert or Nidetch letters had been written. Thus, it must be emphasized that the court is not passing upon whether the Lippert and Nidetch letters were or were not abusive. The court is merely taking notice of the fact that one side has already unilaterally communicated without court authorization with potential class members and that both sides have given indication that, unless restrained, they will continue to make such contacts. Given these facts, the court finds potential for abuse.

on the first requested relief. This is a matter requiring immediate action within the meaning of local rule 5(a) (1).

The plaintiff's first request seeking to restrain the defendant from future communications is granted as herein modified. The *Manual*'s Sample Pretrial Order No. 15, 49 F.R.D. at 230, is to be incorporated in the order to be submitted to this court. Such restraint on future communications is to be made applicable to both the plaintiff as well as the defendant. To be included within the proscription against future communications without prior authorization, are interviews or conversations by the parties with franchisees of the defendant concerning either the substance of this action or the rights of the franchisees with respect to the action.

█ 7. It is clear that once communication has been made, the court should also supervise the contents of any response. 3B J. Moore, Federal Practice ¶ 23.72, at 1422–23 (2d ed. 1969). But this does not require the court to determine whether the Lippert and Nidetch letters are abuses requiring remedial orders. That is a question that has been reserved for Judge Bruchhausen. In the meantime, the parties shall not respond to any communications, regardless of the initial contact, from any franchisee concerning this action except to acknowledge receipt of such communication or to accurately respond to a franchisee's inquiry as to the status of this action provided such responses are limited to a statement of the charges in the complaint, the defendant's response to the charges and a statement noting the existence of this court's memorandum and order. To the extent that this provision is in conflict with Sample Pretrial Order No. 15, this provision shall prevail. Upon a showing of substantial prejudice with respect to a given communication, however, either party may move this court for relief from this provision. Settle order on two days notice.

So ordered.

ORDER

It is ordered that all parties hereto, their officers, directors, employees, agents, representatives and their counsel be, and hereby are, forbidden directly or indirectly, orally or in writing, to communicate concerning such action with any potential or actual class member not a formal party to the action without the consent and approval of the proposed communication and proposed addressees by order of this Court, except any party or its counsel may respond to communications from any franchisee or its counsel by acknowledging receipt thereof and may accurately respond to a franchisee's inquiry as to the status of this action provided such responses are limited to a statement of the allegations in the complaint, defendant's answer and the existence of this order and the Court's memorandum and order dated September 23, 1971. Any proposed communication prohibited by this order shall be presented to this Court in writing with a designation of or description of all addressees and with a motion and proposed order for prior approval by this Court of the proposed communication. The communications forbidden by this order include, but are not limited to, (a) solicitation directly or indirectly of legal representation of potential and actual class members who are not formal parties to this action; (b) solicitation of fees and expenses and agreements to pay fees and expenses from potential and actual class members who are not formal parties to this action; (c) solicitation of requests by class members to opt out of this action; and (d) communications from counsel or a party which may tend to misrepresent the status, purposes and effects of this action and of any actual or potential Court orders, which may create impressions tending, without cause, to reflect adversely on any party, any counsel, this Court, or on the administration of justice. The obligations and prohibitions of this order are not exclusive. All other ethical, legal and equi-

table obligations are unaffected by this order. This order does not forbid (1) communications between an attorney and his client or a prospective client, who has on the initiative of the client or prospective client consulted with, employed or proposed to employ the attorney, or (2) communications occurring in the regular course of business which do not have the effect of soliciting representation by counsel or to opt out of this action or misrepresenting the status, purposes or effect of the action and orders therein;

It is further ordered that the balance of plaintiff's motion be, and the same hereby is, respectfully referred to the Hon. Walter Bruchhausen, for decision; and

It is further ordered that the Motion Clerk be, and hereby is, directed to deliver all papers relating to this action to the Chambers of the Hon. Walter Bruchhausen.

So ordered.